UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE B.M.,<br><br>Petitioner,<br><br>v.<br><br>RON MURRAY, Warden of the Mesa Verde Detention Center; ORESTES CRUZ, Acting Field Office Director for Enforcement and Removal Operations at the San Francisco Field Office; PAM BONDI, Attorney General, United States Department of Justice; KRISTI NOEM, Secretary, United States Department of Homeland Security; TODD LYONS, Acting Director of Unites States Immigration and Customs Enforcement,<br><br>Respondents. | No. 1:25-cv-01584-KES-CDB (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 3 |

This habeas action concerns the re-detention of petitioner Jose B.M., a noncitizen who was detained and released in 2024 but was recently re-detained.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 3. For the reasons explained below, petitioner's motion for temporary restraining order, which the Court converts to a motion for preliminary injunction, is granted.

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

### I. Background

Petitioner is a 30-year-old asylum-seeker from Colombia who entered the United States without inspection on October 23, 2024. Doc. 3, B.M. Decl. at ¶ 3; Doc. 7-1, Martinez Decl. at ¶ 5. Immigration authorities arrested and detained him at that time. Doc. 3, B.M. Decl. at ¶ 3; Doc. 7-1, Martinez Decl. at ¶ 5. They initially processed petitioner for expedited removal, but they provided a credible fear interview after he expressed a fear of returning to Colombia. Doc. 7-1, Martinez Decl. at ¶ 6. An asylum officer found that petitioner had a credible fear of torture if he returned to Colombia. Doc. 7-1, Martinez Decl. at ¶¶ 7–8; Doc. 3, B.M. Decl. at ¶ 4. Immigration officials then served him with a notice to appear in immigration court and placed him in removal proceedings under 8 U.S.C. § 1229a. Doc. 7-1, Martinez Decl. at ¶ 8. On November 21, 2024, petitioner was released from detention on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Doc. 3 at 30–31; Doc. 7-1, Martinez Decl. at ¶ 9. Immigration officials also enrolled petitioner in the "Alternatives to Detention" program. Doc. 3 at 32; Doc. 7-1, Martinez Decl. at ¶ 9.

By regulation, immigration officials may parole a noncitizen pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding." 8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Immigration officials released petitioner on an ankle monitor and instructed him to report to an ICE office in San Bernardino, California. Doc. 2 at ¶ 26. Petitioner reported as instructed. *Id.* ¶ 27. On December 30, 2024, ICE agents provided him with an order of release on recognizance. *Id.* ¶ 28; Doc. 2 at 35. Petitioner subsequently reported for two in-person check-ins at the Los Angeles ICE office. Doc. 2 at ¶¶ 29–30. Petitioner thereafter moved to San Jose. Doc. 3, B.M. Decl. at ¶ 13. When he arrived, he reported to the Blossom Hill ICE office to update his address. *Id.* He continued to report for check-ins after that. *Id.*

Respondents do not dispute petitioner's assertion that he maintained a clean criminal record while in the United States. Doc. 2 at ¶ 36; *see* Doc. 7. Respondents assert, however, that petitioner failed to complete several virtual check-ins on a phone application and missed five in-person home visits. Doc. 7-1, Martinez Decl. at ¶ 11. ICE contacted petitioner on October 26, 2025, and told him to report to the Blossom Hill ICE office the following day. *Id.* ¶ 12; Doc. 2 at ¶ 32. When petitioner reported as instructed, ICE agents arrested him. Doc. 2 at ¶ 33; Doc. 7-1, Martinez Decl. at ¶ 13. Petitioner is now detained at Mesa Verde ICE Processing Center. Doc. 7-1, Martinez Decl. at ¶ 14.

On November 18, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 2, and a motion for temporary restraining order, Doc. 3. He argues that the Due Process Clause required that he be provided a hearing prior to his re-detention and that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a) and its implementing regulations. *See* Docs. 2, 3. Respondents filed an opposition on November 25, 2025. Doc. 7. Petitioner filed a reply on December 1, 2025. Doc. 8.

**II.    Conversion to a Motion for Preliminary Injunction**

The Court directed the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether they requested a hearing on the motion. Doc. 5. Neither party objected to converting the motion or requested a hearing. *See* Docs. 7, 9. Given that the standard for issuing a temporary restraining order and preliminary injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and that respondents had notice and opportunity to respond in opposition, *see* Doc. 7, petitioner's motion is converted to a motion for preliminary injunction.

**III.   Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

3

1  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.
2  531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of
3  success on the merits is a threshold inquiry and is the most important factor." *Simon v. City &*
4  *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*
5  *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious
6  questions going to the merits—a lesser showing than likelihood of success on the merits—then a
7  preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's
8  favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767
9  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**IV. Discussion**

    **a. Likelihood of Success on the Merits**

Petitioner argues that the Due Process Clause bars the government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger. Doc. 3 at 12–18. In response, respondents argue that petitioner has no due process rights because he is subject to the "entry fiction" doctrine. Doc. 7 at 2–3.

The Supreme Court has noted the distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). But those at the threshold of initial entry typically have only those rights provided by statute. *See U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

The "entry fiction" extends this distinction "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen an alien arrives at a port of entry—[such as] an

4

1  international airport—the alien is on U. S. soil, but the alien is not considered to have entered the
2  country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,
3  139 (2020). The entry fiction limits a noncitizen in such circumstances to "only those rights
4  *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added); *see*
5  *also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the
6  distinction between a challenge to admission and a challenge to detention and holding that
7  *Thuraissigiam* does not foreclose a challenge to detention).

8  Respondents argue that *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en
9  banc), *superseded by statute as stated in Xi*, 298 F.3d at 837–38, precludes petitioner's challenge
10 to his immigration detention. In *Barrera-Echavarria*, the petitioner was a Cuban national who
11 was detained at a port of entry. *Id.* at 1143–44. After the petitioner was ordered excluded, he was
12 paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) as he could not be deported to
13 Cuba, but he was subsequently re-detained after he committed various crimes while on parole.
14 *Id.* at 1443–44. The Ninth Circuit found that the former 8 U.S.C. § 1226(e), which has since been
15 repealed, statutorily authorized the indefinite detention of a noncitizen who had been ordered
16 excluded but whose deportation could not be effectuated. *Id.* at 1444–48 (citing 8 U.S.C.
17 § 1226(e) (repealed 1996)). The petitioner argued that "his detention in federal prisons almost
18 continuously since 1985 [fell] on the punishment side of the line and violate[d] his [substantive]
19 right to due process." *Id.* at 1448. The Court rejected that claim, finding that "[b]ecause
20 excludable aliens are deemed under the entry doctrine not to be present on United States territory,
21 a holding that they have no substantive right to be free from immigration detention reasonably
22 follows." *Id.* at 1450.

23 Respondents argue that the entry fiction also applies to petitioner and that *Barrera-*
24 *Echavarria* forecloses his due process claim for release from detention. But as the Ninth Circuit
25 noted in *Xi*, "the statute interpreted in *Barrera-Echavarria* no longer exists," and subsequent
26 amendments to the immigration laws "introduced an entire set of legal concepts purporting to
27 redefine the 'basic territorial distinction' at play in immigration law." *Xi*, 298 F.3d at 838
28 (quoting *Zadvydas*, 533 U.S. at 694). *Barrera-Echavarria* considered the Attorney General's

5

statutory authority "to detain undeportable, excludable aliens." *Barrera-Echavarria*, 44 F.3d at 1444. But "'excludable' is no longer a term that has any statutory import under the INA." *Xi*, 298 F.3d at 838.[2]

Other district courts in this circuit that have found that a noncitizen like petitioner, who was paroled into the United States, has a due process right to challenge his re-detention without a bond hearing. *See, e.g.*, *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025*)*; *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrera-Echavarria* inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").[3] The Court similarly finds that petitioner has a due process right to challenge his re-detention pending his removal proceedings.

Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.

---

[2] In *Zadvydas v. Davis*, the Supreme Court, noting the "serious constitutional problem" that would be presented if a statute permitted "indefinite detention of an alien[,]" employed the constitutional avoidance canon in holding that 8 U.S.C. § 1231(a)(6) "limits an alien's post-removal-period detention" to a reasonable period and "does not permit indefinite detention." *Zadvydas v. Davis,* 533 U.S. 678, 689–90 (2001). In *Xi*, the Ninth Circuit found that this interpretation of § 1231(a)(6) also applied to inadmissible aliens. *Xi*, 298 F.3d at 836–39.

[3] Similarly, in a due process challenge to the prolonged detention of a § 1225(b) detainee, the United States District Court for the Southern District of California rejected the argument that *Barrera-Echavarria* and the entry fiction foreclosed the petitioner's due process claim. *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 770 (S.D. Cal. 2020); *see also Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8 U.S.C. § 1225(b)).

6

Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### i. Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Petitioner's humanitarian parole was similar. It allowed him to establish ties in the community while pursuing relief in his removal proceedings. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*,

7

542 U.S. 507, 529 (2004). The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### ii. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for nearly a year while seeking relief in his removal proceedings. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690;

8

*Padilla*, 704 F. Supp. 3d at 1172. While respondents allege that petitioner violated the terms of his release, courts have found in similar cases that it does not "necessarily follow that Petitioner can be detained for those violations without a hearing." *T.B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Id.* Here, as there were no procedural safeguards to determine if petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.[4]

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025); *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an *overwhelming interest* in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has *no interest* in revoking parole without some informal procedural guarantees."). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing. At such a hearing, the government must prove that he is a flight risk or danger to the community by clear and convincing evidence. *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025

---

[4] Respondents argue that petitioner has an immigration court hearing scheduled for January 9, 2026, and that this hearing will afford him the process he is due. Doc. 7 at 3–4. However, as petitioner points out, that hearing is part of petitioner's removal proceedings, not a bond hearing. Moreover, even if petitioner did have a bond hearing scheduled, the immigration court would be bound to follow a recent decision of the Board of Immigration Appeals, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which holds that all noncitizens who entered the United States without inspection are subject to 8 U.S.C. § 1225(b) and therefore ineligible for release on bond.

WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025); *see also Addington v. Texas*, 441 U.S. 418, 425–33 (1979) (holding that clear and convincing evidence standard was appropriate standard of proof for civil commitment proceedings for the mentally ill). And that hearing should have occurred before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

In this case, petitioner allegedly violated the terms of his release by failing to complete certain virtual check-ins on the phone application and by missing certain in-home visits. Doc. 7-1, Martinez Decl. at ¶ 11. But respondents assert that petitioner's last such violation was on September 26, 2025. *Id.* And after that alleged violation, petitioner appeared at the ICE office as instructed on October 27, 2025. *Id.* ¶¶ 12–13. The fact that petitioner appeared as instructed undermines the argument that exigent circumstances warranted his immediate arrest as a flight risk, without any pre-deprivation process.

Petitioner has therefore established that he is likely to succeed on the merits of his claim that his re-detention without a pre-deprivation bond hearing violated the Due Process Clause.

### b. Irreparable Harm

Turning to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged

10

deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the government can re-detain petitioner at all, but whether it can re-detain petitioner without a bond hearing before the conclusion of his removal proceedings.  Respondents argue that they have a strong interest in subjecting petitioner to mandatory detention, but immigration authorities previously released him on parole pending removal proceedings and his removal proceedings have not ended.  Faced with a choice "between [minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor.  "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

### d. Remedy

The Court finds that the requirements for issuing a preliminary injunction are met.  Petitioner's immediate release is required to return him to the status quo ante—"the last

uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

**V.      Conclusion and Order**

Accordingly:

1. Petitioner's motion for a preliminary injunction, Doc. 3, is GRANTED.

2. Respondents are ORDERED to release petitioner immediately.

3. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

5. This matter is referred to the assigned magistrate judge for further proceedings, including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:   January 3, 2026                     _____
                                             UNITED STATES DISTRICT JUDGE